FILED

98 NOV -4 PH 3: 20

N.D. OF DISTRICT COURT
OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

CATHY WILEY and JAMES WILEY,      )
                                  )
        Plaintiffs,               )
                                  )
v.                                )      CIVIL ACTION NO. 96-JEO-3241-M
                                  )
LINCOLN AUTOMOTIVE, a division    )
of Pentair Corporation,           )      **ENTERED**
                                  )
        Defendant.                )      NOV 0 4 1998

## MEMORANDUM OPINION

Before the court is the defendant's Motion for Summary Judgment on the plaintiffs' claims under the Alabama Extended Manufacturer's Liability Doctrine. Upon consideration of the record, the submissions of the parties and the relevant law, the undersigned is of the opinion that the Motion for Summary Judgment is due to be denied.

## FACTUAL BACKGROUND

Plaintiff Cathy Wiley was using a grease gun manufactured by defendant Lincoln Automotive on November 15, 1994, when the hose attached to the grease gun ruptured, causing injuries to the plaintiff's hand. (Doct. 1, Ex. A, p. 3, ¶ 4). The grease gun and hose were purchased by plaintiff's husband, plaintiff James Wiley, approximately four to five years earlier.

The lawsuit was originally filed in the Circuit Court of St. Clair County, Alabama.

27

It was removed to this court on December 13, 1996.  Defendant filed a Motion for Summary Judgment on September 9, 1998, alleging that the grease gun hose which is the basis of the claims was not manufactured by the defendant.  (Doct. 22).

## SUMMARY JUDGMENT STANDARD

Summary judgment is to be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the declarations, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P.* 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The party asking for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof.  *Celotex,* 477 U.S. at 322-23; *see Fed. R. Civ. P.* 56(a) and (b).  Once the moving

party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324. The nonmoving party need not present evidence in a form necessary for admission at trial; however, the movant may not merely rest on the pleadings. *Id.*

After a motion has been responded to, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A judge's guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 259; *see Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983). *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 643 (11th Cir. 1997). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts is the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen*, 121 F.3d at 643.

## DISCUSSION

There is no dispute that, at the time of the accident, Cathy Wiley was using a Model 1142 hand grease gun manufactured and marketed by defendant Lincoln Automotive. The issue centers on the hose that was attached to the gun at the time of the accident. Plaintiffs assert that it was the hose that came with the gun at the time it was purchased. Defendant asserts that the gun was not manufactured or sold with this hose attached. The hose that ruptured is a black flexible hose, approximately 17 and 3/4 inches long and with brass fittings on the ends. (Doct. 22, Ex. A, p. 12; Doct. 26, Ex.1, Photograph, p. 4).

When the motion for summary judgment was filed, it was supported by the deposition of Donald Alexander, who at the time of the deposition was the manager of quality and manufacturing engineering for Lincoln. (Doct . 22, Ex. A, pp. 5-6). He has been with the company since 1984 and is familiar with the company's grease guns and accessories. He states in his deposition that the hose that ruptured in this case was not marketed by the defendant. (*Id*. at 10). He reached this conclusion by examining the hose in question and comparing it to the hoses marketed by Lincoln in the relevant time frame.[1] Specifically, he compared the overall length and diameter of the hoses and the length and crimping pattern on the fittings. (*Id*.).

Lincoln filed an amendment to the Motion for Summary Judgment. (Doct. 24).

---

[1] He used samples numbered 71518 and 5818 which were marketed by Lincoln during 1990 because their overall length was similar to the hose in issue.

5

It consisted of an affidavit of Steven W. Post and a copy of a catalogue from the company. Mr. Post stated that he is a design manager with Lincoln and that the attached catalogue was in use at the time the Model 1142 grease gun involved in this case was manufactured in May 1990.  It shows that the Model 1142 grease gun was manufactured with a six-inch nozzle extension. (Doct. 24, Catalogue, p. 2).

Plaintiffs' responded to the motion by submitting the affidavit of plaintiff James Wiley. He states:

> . . . I had purchased the grease gun and hose about 4 to 5 years before the injury occurred. Although I cannot recall the store where I purchased the grease gun and hose, I do remember that this hose came with the grease gun. In addition to the rubber flexible hose, the grease gun came with a metal extension that is approximately 6 inches in length.
>
> I have never bought any replacement hoses for any of the grease guns that I have owned. At the time my wife was injured, I did not own any other grease guns. Also, I have never switched hoses from an old grease gun to a new grease gun.
>
> . . . .
>
> I did not buy the hose involved in my wife's accident separate from the grease gun. The hose involved in my wife's injury was packaged with the grease gun when I purchased it.

(Doct. 25, Affidavit, pp. 1-3).

Lincoln filed a second "Amendment to Motion for Summary Judgment" that the court is treating as a submission of discovery by defendant Lincoln. (Doct. 26). The material includes a second affidavit from Steven Post and deposition excerpts from Donald Alexander and James Wiley. Post's affidavit includes various company drawings

that show the engineering design specifications for hose models 71518 and 5818. According to the affidavit of Post and the attached drawings, the hoses that were marketed by Lincoln when the Model 1142 grease gun was purchased by James Wiley four to five years before the accident (1989 to 1990) had steel fittings and not brass fittings like those found on the hose in question. (Doct. 26, Second Affidavit of Post, p. 2). Further, according to Post, Lincoln's flexible grease gun hoses were marketed with steel fittings until July 16, 1992. (*Id*.). Therefore, Post concludes that the hose in question could not have been marketed by Lincoln with the Model 1142 grease gun.

The parties have presented probative evidence on the issue. In his affidavit, James Wiley specifically states that the grease gun and hose were purchased together. The defendant's evidence tends to indicate that it did not and could not have made the hose. As this court is required to view the evidence in favor of the nonmoving party at this juncture, the court concludes there is a genuine issue of fact as to whether the hose in question was sold with the Lincoln Model 1142 grease gun. This genuine issue of material fact precludes summary judgment.

## CONCLUSION

Premised on the foregoing, the defendant's motion for summary judgment is due to be denied. An order consistent with the findings reflected in this Memorandum Opinion will be entered contemporaneously herewith.

7

The Clerk of the Court is DIRECTED to serve a copy of this Memorandum Opinion upon counsel for the parties.

DONE this 4th day of November, 1998.

JOHN E. OTT
UNITED STATES MAGISTRATE JUDGE

8